CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

February 12, 2014

LETTER TO COUNSEL:

RE: *Kelvin Devaughn Watson v. Commissioner, Social Security Administration*;
Civil No. SAG-13-205

Dear Counsel:

On January 18, 2013, the Plaintiff, Kelvin Devaughn Watson, petitioned this Court to review the Social Security Administration's final decision to deny his claims for Supplemental Security Income and Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Mr. Watson's reply. (ECF Nos. 15, 19, 24). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Mr. Watson filed his claims for Disability Insurance Benefits and Supplemental Security Income on July 15, 2009, alleging disability beginning on June 1, 2007. (Tr. 159-67). His claims were denied initially on November 17, 2009, and on reconsideration on May 20, 2010. (Tr. 106-10, 113-16). A hearing was held on June 29, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 39-101). Following the hearing, on September 23, 2011, the ALJ determined that Mr. Watson was not disabled during the relevant time frame. (Tr. 17-38). The Appeals Council denied Mr. Watson's request for review, (Tr. 4-7), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Watson suffered from the severe impairments of "gunshot wounds in the remote past (1996 or 1998) with recent surgery in April 2010 to remove 3 bullet fragments; nerve damage in the dominant left hand, and post-traumatic stress disorder." (Tr. 22). Despite these impairments, the ALJ determined that Mr. Watson retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is further limited to occasionally handling and fingering with the upper extremities; occasionally climbing ramps or stairs (never ladders, ropes or scaffolds), balancing, stooping, kneeling, crouching and crawling; carrying out simple tasks in 2-hour increments (which can be accommodated by regularly scheduled breaks); having occasional interaction with coworkers, supervisors, and the general public; and adapting to simple changes in a routine work setting

(Tr. 24). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Watson was able to perform work existing in significant numbers in the national economy, and that he was not therefore disabled. (Tr. 33-34).

Mr. Watson presents a series of arguments on appeal: (1) that the ALJ made procedural errors; (2) that the ALJ erred in considering his use of alcohol; (3) that the ALJ erroneously made an adverse credibility assessment; (4) that the ALJ failed to consider the severity of his GERD and cellulitis diagnoses and attendant symptoms; (5) that the ALJ failed to consider Listing 1.04; (6) that the ALJ did not adequately assess his mental health impairments, and (7) that the jobs provided by the VE did not comply with his RFC assessment. Each arguments lack merit.

Starting with the unsuccessful procedural arguments, Mr. Watson first contends that the ALJ should have found a protective filing date of September, 2008, as a result of an earlier application for benefits that the agency misplaced. Pl. Mot. 33-34. However, in light of the ALJ's conclusion that Mr. Watson was not entitled to benefits, the protective filing date was immaterial. Mr. Watson also argues that the ALJ failed to expunge a function report, submitted by an unknown individual, from the file. Pl. Mot. 36-37. The ALJ expressly stated, in the opinion, that the report had been expunged and was not considered in reaching any conclusions. (Tr. 20). The ALJ further explained, at the hearing, that despite the expungement, the report might physically remain in the file. (Tr. 44). Because the report was not considered by the ALJ, whose opinion is the one under review, remand is unnecessary. Mr. Watson's final procedural argument is that the ALJ failed to fully develop the record by seeking to obtain medical records from the period between 1995 and 2009. Pl. Mot. 34-36. It is the claimant's burden, through the first four steps of the sequential evaluation, to present evidence establishing disability. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). Particularly where, as here, the claimant is represented by counsel, the claimant cannot shift that burden by contending that the ALJ shouldered the duty to procure additional records that were not offered by his attorney.

Next, Mr. Watson contests the ALJ's characterization of his use of alcohol. Pl. Mot. 37-40. However, without determining whether or not the ALJ's characterization was accurate, any misstatements about the use of alcohol would be harmless error. The ALJ did not premise the denial of benefits on substance abuse, but simply cited the inconsistent statements about drinking as one of several factors supporting an adverse credibility assessment. (Tr. 26, 27-28). Thus, any error in the characterization does not warrant remand.

Mr. Watson further contends that the ALJ erroneously made an adverse credibility finding. Pl. Mot. 40-44. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work." *Id.* at 595. The ALJ followed that process in this case. She determined that Mr. Watson's "medically determinable impairments could reasonably be expected to cause the

alleged symptoms." (Tr. 26). However, she did not find Mr. Watson's testimony concerning the intensity, persistence, and limiting effects of his symptoms to be fully credible. *Id.*

In the credibility analysis, the ALJ noted that there was no objective evidence to support Mr. Watson's complaints of disabling pain. (Tr. 26). In addition, the ALJ noted some evidence in the record regarding Mr. Watson's physical activities which included boxing and animal care, and testimony that Mr. Watson did not perform household chores not because of an inability to do so, but because his girlfriend simply took care of those chores. (Tr. 26, 27). The ALJ also cited inconsistent information in the treatment records regarding Mr. Watson's use of alcohol. (Tr. 27-28). Finally, the ALJ cited physicians' reports that suggested that Mr. Watson experienced a less-than-disabling level of pain. (Tr. 29-30). I find that the analysis provided by the ALJ provides substantial evidence to support her adverse credibility conclusion.

Mr. Watson argues that the ALJ failed to explain why he did not meet the criteria for Listing 1.04. Pl. Mot. 44-45. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in original). The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler,* 785 F.2d 1147, 1152 (4th Cir. 1986). An ALJ is required to discuss listed impairments and compare them individually to listing criteria *only when* there is "ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel,* 68 F.Supp.2d 629, 645 (D. Md. 1999) (emphasis added). Here, there is insufficient evidence to support this requirement. Although Mr. Watson does not specify which subsection of Listing 1.04 he believes he might meet, each of the subsections requires "compromise of a nerve root or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. There is no evidence in the record of any such compromise. Further, the cited records lend support to the ALJ's assessment that objective medical records demonstrated only mild musculoskeletal symptoms. (Tr. 329-30) (indicating that while Mr. Watson complained of joint pain, examination revealed unremarkable results, normal muscle tone, full and symmetric muscle strength, and normal muscle tone without any atrophy or abnormal movements); (Tr. 308-30) (finding some limitation in the range of motion in his lower extremities, but concluding that Mr. Watson's pain seemingly did not require pain medication, and only "he may benefit from physical therapy"). Accordingly, there is no error in the ALJ's decision not to specifically identify that Listing.

Mr. Watson also argues that the ALJ failed to consider the severity of his GERD and cellulitis at Step Two of the sequential evaluation. Pl. Mot. 44. An impairment is considered "severe" if it significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1521(a). The claimant bears the burden of proving that his impairment is severe. *Johnson v. Astrue*, No. PWG-10-3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). While medical records show that Mr. Watson was treated several times for GERD and cellulitis, he has failed to show either condition significantly limited his ability to work. Mr. Watson complained of abdominal pain and acid reflux, was diagnosed with GERD, and was treated with omeprazole, Nexium, Zantac, and Percocet. *See* (Tr. 296-300, 343,

394-97). As the ALJ noted, Mr. Watson was hospitalized in early 2009 for epigastric pain.[1] (Tr. 28, 279-84). Upon discharge, Mr. Watson was pain-free and prescribed Zantac and Percocet. (Tr. 283). Mr. Watson's physicians never recommended surgery or treatment beyond prescription-strength medications to treat his GERD.[2] Regarding his cellulitis, the ALJ noted that Mr. Watson was treated for it. (Tr. 29, 323). Records show that his cellulitis was treated with antibiotics and pain medication a number of times. (Tr. 327-28, 398-400, 434-37, 446-49). However, the records also show that the cellulitis responded to treatment. (Tr. 325-26). Further, while Mr. Watson was treated for cellulitis at least three times, he has not demonstrated that the condition was chronic or persistent. *See* 20 C.F.R. § 404, app. 1, §§ 8.00G & 8.04 (requiring evidence that skin lesions persist for at least three months despite treatment). Mr. Watson visited doctors in between bouts of cellulitis without mention of it. *See, e.g.,* (322-24) (December 2009 visit following November 2009 cellulitis treatment showing no further complaint of the condition); (Tr. 394-97) (March 2010 visit following cellulitis diagnosis two weeks earlier with no mention of condition). Thus, I cannot find that the ALJ erred in finding both conditions non-severe. Moreover, even if I were to find that the ALJ erred in her evaluation of any of Mr. Watson's impairments at step two, such error would be harmless. Because Mr. Watson made the threshold showing that other disorders constituted severe impairments, the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and non-severe, that significantly impacted Mr. Watson's ability to work. *See* 20 C.F.R. § 404.1523.

Mr. Watson next argues that the ALJ failed to consider Mr. Watson's psychiatric impairments. Pl. Mot. 45-48. The Commissioner concedes that the ALJ overlooked treatment that Mr. Watson received in stating that he did not receive any mental health treatment between the time of the 1995 shooting incident and his April 2010 psychiatric consultative examination with Dr. Dhir. Def. Mot. 18 (referring to Tr. 30-31). In fact, Mr. Watson was diagnosed with adjustment disorder during a hospitalization in the weeks following the shooting. (Tr. 258) (summarizing that he was treated successfully for nightmares, anxious moods, and insomnia with Valium and Mellaril). Additionally, Mr. Watson reported he received treatment and a PTSD diagnosis in early 2008 while incarcerated. (Tr. 500). However, despite her misstatement, the ALJ amply supported her overall assessment that the severe symptoms Mr. Watson reported to Dr. Dhir were incongruous with the totality of the mental health treatment records. The ALJ accurately summarized that after initial evaluation and treatment appointments with counselor Karen Hall and psychiatrist Sangwoon Han, Mr. Watson showed improvement with Prozac and limited therapy. (Tr. 31) (referring to Tr. 486-520). As the ALJ observed, Mr. Watson subsequently missed several appointments in the fall of 2010 and spring of 2011. *See* (Tr. 521, 522, 523, 524, 526, 527, 535, 536, 537) (showing that Mr. Watson missed or rescheduled nine appointments); *see also* (Tr. 525) (indicating that Mr. Watson called and complained of increased agitation after his Prozac prescription ran out). While I agree that the ALJ placed

---

[1] As the ALJ observed, Dr. Lakvinder Wadhwa indicated that Mr. Watson's acute symptoms could be attributed to his "chronic alcohol use[,]" advised him to discontinue alcohol, and referred him to Community Action for assistance with his drinking. (Tr. 28, 283).

[2] Dr. Syed did increase Mr. Watson's omeprazole dosage after he complained that a lower dosage did not relieve his acid reflux. (Tr. 343-36).

undue emphasis on Mr. Watson's alleged "exaggerations," I cannot find error in her ultimate finding that his mental health issues caused no greater functional limitations than those included in the RFC assessment.

Finally, Mr. Watson argues that the jobs provided by the VE were inconsistent with the ALJ's RFC assessment because they required more than occasional handling and fingering. The VE testified that Mr. Watson was able to perform work as a machine operator, citing DOT # 569.686-046[3] as a representative position, and as a stenciler, citing DOT # 659.685-026 as a representative position. Although Mr. Watson extrapolates from the narrative descriptions of the positions that they do not comply with Mr. Watson's handling and fingering limitation, a review of both listings shows that they explicitly specify a requirement of no more than "occasional[]" handling and fingering.

For the reasons set forth herein, Mr. Watson's motion for summary judgment (ECF No. 15) will be DENIED and Defendant's motion for summary judgment (ECF No. 19) will be GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                                          Sincerely yours,

                                                          /s/

                                                          Stephanie A. Gallagher
                                                          United States Magistrate Judge

---

[3] The VE mistakenly cited DOT # 569.687-046.